DeBarre *v.* Livingston.

———————•●•———————

ABRAHAM DEBARRE and others *vs.* JOHNSTON LIVINGSTON, President of the Hope Express Company.

A receipt, such as is usually given by express companies for goods delivered to them to be carried by express, is not an *agreement* within the meaning of the stamp act, requiring a stamp of five cents.

It is a receipt for the property to be transported, and contains only a notice of the terms on which the company is willing to undertake the transportation.

Such receipt is not subject to any stamp duty, but is excepted in the act of congress of 1865.

Whether congress has the power to declare a contract void for the want of the proper stamp ? *Quære.*

THE plaintiffs sue the defendant to recover the value of two packages of goods delivered to him to be carried by express. The value of the property exceeded $100. The property was not delivered. On the trial, after proof of delivery of the property to the defendant, and its value and loss, the defendant offered in evidence the receipt which was given on the delivery of the packages by the defendant. This receipt, in addition to acknowledging the delivery to him of the packages, contained certain terms and conditions on which the

defendant agreed to carry the same, and limiting his liability to fifty dollars, and was signed by the agent of the defendant. The date was in July, 1865. This paper was objected to by the plaintiffs on the ground that it had no revenue stamp thereon, and was excluded by the court. The plaintiffs had a verdict for the full amount claimed, and the defendant appealed.

*C. A. Seward*, for the appellant. I. A common carrier may limit his liability in any manner not *contra bonos mores*. (*The New York Manufacturing Co.* v. *The Illinois C. R. R. Co.*, 3 *Wallace Sup. Ct. Reps.* 107.)

II. The issuance and acceptance of the given receipt effected such limitation in the present case. The shipper was bound by the $50 stipulation, which was legal. (*Newstadt v. Adams*, 5 *Duer* 43. *Van Winkle* v. *Adams, MM. Supr. Court, Hoffman, Pierrepont and Moncrief, JJ. Dorr* v. *N. J. S. Nav. Co.*, 1 *Kern.* 485. *Parsons* v. *Monteath*, 13 *Barb. R.* 353. *Moore* v. *Evans,* 14 *id.* 524.) In the case cited from the 3d of Wallace, the charge of the judge, which was sustained by the Supreme Court, was : " It is competent for the carrier alone to limit his liability without the engagement of the owner." This is universal law. Every bill of lading is unilateral so far as the signatures are concerned, and yet the shipper by accepting it is universally held to be concluded by its terms. The rule is the same also, both as to mortgages and as to policies of insurance. As to both of these, acceptance is assent to expressed conditions.

III. The ruling of the court below, excluding the receipt as evidence, was most disastrous in its results, and should not be sustained unless it is so clearly correct, that no reasonable legal doubt can be urged against it. 1. It makes the 440 express companies liable every day for millions of property, the value of which the owners do not choose to declare, lest they should be obliged to pay increased charges thereon. 2. It renders the companies liable to pay enormous fines for a fail-

DeBarre *v.* Livingston.

ure, since the date of the passage of the internal revenue laws, to affix the five cent stamp. 3. It renders the officers and agents of the companies liable to indictment and imprisonment for the same neglect; and 4. It violates the actual and practical construction placed upon the revenue laws both by the treasury department of the United States and by the companies.

IV. The United States internal revenue laws do not require a five cent stamp to be affixed to receipts issued by express companies. It is only necessary to an acquiescence in this proposition that the legislation by congress, in reference to these companies, should be understood. The first internal revenue act was passed July 1, 1862. (12 *U. S. Stat. at Large,* 432.) Section 105 of this act was as follows :

" *And be it further enacted,* That on and after the date on which this act shall take effect, no express company, or its agent, or employee, shall receive for transportation from any person any bale, bundle, box, article or package of any description, without either delivering to the consignor thereof a printed receipt, having stamped, or affixed, thereon a stamp denoting the duty imposed by this act, or without affixing thereto an adhesive stamp or stamps denoting such duty, and in default thereof shall incur a penalty of ten dollars : *Provided,* that but one stamped receipt or stamp shall be required for each shipment from one party to another party at the same time, whether such shipment consists of one or more packages : *And provided, also,* that no stamped receipts or stamp shall be required for any bale, bundle, box, article or package transported for the government, nor for such bales, bundles, boxes or packages as are transported by such companies without charge thereon."

To section 110 was appended " schedule B," which contained a clause as follows : " Express.—For every receipt or stamp issued, by any express company, or carrier, or person whose occupation it is to act as such, for all boxes, bales,

packages, articles or bundles, for the transportation of which, such company, carrier or person, shall receive a compensation of not over twenty-five cents, one cent. When said compensation exceeds the sum of twenty-five cents, and not over one dollar, two cents. When one or more packages are sent to the same address at the same time, and the compensation therefor exceeds one dollar, five cents. The first paragraph of schedule B initiates the five cent stamp duty on agreements. Its language is, " Schedule B. Stamp duties. Agreement or contract other than those specified in this schedule," five cents per sheet. Inasmuch as express receipts were specified in schedule B, by name, this first clause as to " agreement or contract" had no application to them, and hence they did not require a five cent stamp. The practical working of this provision was so onerous and cumbersome that the companies applied to congress to change the method of taxation from a stamp tax upon the receipt or package to a tax upon their gross receipts. This request was complied with. On the 3d of March, 1863, congress passed another act, entitled " An act to amend" the act of July 1, 1862, the first section of which (12 *U. S. Stat. at Large,* 713) declares that the act of July 1, 1862, " be, and the same is hereby amended as hereinafter set forth, namely," and section 110 of the act of July 1, is declared by section 6 ( *p.* 720) to be amended as follows : * * * " The duty or stamp required for transportation by express companies and others, is hereby repealed, and such transportation shall be exempt from stamp duty." This did away with stamps of every kind. The stamp was replaced by a duty on gross cash receipts. Section 10 of the act of 1863 was as follows :

" *And be it further enacted,* That on and after the first day of April, eighteen hundred and sixty-three, any person or persons, firms, companies or corporations carrying on or doing an express business shall, in lieu of the tax and stamp duties imposed by existing laws, be subject to and pay a duty of two per centum on the gross amount of all the receipts of

such express business, and shall be subject to the same pro-
visions, rules and penalties as are prescribed in section eighty
of the act to which this is an amendment, for the persons,
firms, companies or corporations owning, or possessing, or
having the management of railroads, steamboats and ferry-
boats ; and all acts or part[s] of acts inconsistent herewith,
are hereby repealed."

Then came the act of June 30, 1864, which repealed the
foregoing provisions and substituted in section 104, (13 *U. S.
Stat. at Large,* 276,) the following : "*And be it further
enacted,* That any person, firm, company or corporation car-
rying on or doing an express business, shall be subject to and
pay a duty of three per centum on the gross amount of all
the receipts of such express business." Section 151 of this
act re-enacted schedule B. The important parts are these,
(*p.* 298 :) "Agreement or contract, other than those speci-
fied in this schedule," five cents per sheet. "Receipts for
the delivery of any property, two cents." So the companies
found themselves doubly taxed ; once on their gross receipts
and once for the stamp duty so specifically laid in schedule
B. as to exclude the idea that they were also to pay a further
duty of five cents as an agreement stamp. The companies
rebelled against this and, refusing to stamp, were sued and
their agents were indicted. Application was made for relief
to the commissioner, upon the ground that Mr. Fessenden,
then secretary of the treasury, had advised the companies
that the imposition of a stamp duty on their receipts was un-
intentional and that they need not comply with the law.
The commissioner was also asked what amount of stamp was
required to be placed upon the express receipts. His answer
was as follows : * * * "I think that the excise act requires
that each particular receipt shall be stamped with a two cent
stamp, and that I have no authority to accept a composition
for the amount of duties which have accrued, or which shall
hereafter accrue, except by way of compromise of suits that
have been instituted. An unstamped receipt is not admissi-

ble as evidence, and, therefore, cannot be used as a discharge of the company, nor can it be used for any purpose in a court of justice."

The express companies complied with this decision, and used a two cent stamp till the next session of congress, when they applied to be relieved therefrom. Such relief was granted by the act of congress of March 3d, 1865, entitled "an act to amend the act" of June 30, 1864, (13 *U. S. Stat. at Large,* 469.) That act amends schedule B, as follows: "That schedule B, preceding section one hundred and seventy-one, be amended in the paragraph marked "receipts," by inserting after the word "property," the words "except receipts issued by any persons, firms or companies doing business as an express or express company on the delivery of any property for transportation." Since this act went into effect, the express companies have not been required to stamp their receipts.

From this resume it results, 1st. That congress has recognized an express receipt as a well known commercial instrument, having a distinct and independent individuality and identity, under and by the name of "express receipts." 2d. That congress originally intended to tax such instruments, *eo nomine,* by a distinct and independent stamp duty, graduated by the rate of express charge. 3d. That the imposition of such specific stamp duty, together with the distinct specification of "express receipts," in schedule B, excludes the idea that by the words in the act of 1862, "agreement or contract other than those specified in this schedule," five cents per sheet, congress intended to impose a further duty of five cents upon each express receipt. So to construe the act of 1862, would be, (*a.*) To violate the clear intention of congress. (*b.*) To nullify the words "other than those specified in this schedule," which does distinctly specify "express receipts" *eo nomine.* (*c.*) To require an agreement stamp upon every note, bill, bond, &c. notwithstanding each of such instruments is specified in the schedule. 4th. That congress

changed the method of taxation advisedly, and placed the tax upon the gross incomes of express companies, and relieved them from all stamp duties. The same language is preserved in schedule B, in the act of 1864, as amended by the act of 1865, viz : " Agreement or contract *other than those specified in this schedule.*" Express receipts are there specified, and with a renewed intent to 'exempt them from taxation, by the words; " *except receipts issued by express companies on the* delivery of any property for transportation," being the same " receipts issued by express companies for transportation," upon which the act of 1862 placed a graduated stamp duty, and which were relieved therefrom by the act of 1863. 5th. That express companies do not require an agreement stamp.

V. Section 158, of 1864, as amended by the act of 1865, (13 *U. S. Stat. at Large,* 481,) provides, " that any person who shall issue any instrument without the same being duly stamped, *with intent to evade the provisions* of this act, shall forfeit," &c. " and such instruments shall be deemed invalid and of no effect." The " intent to evade " is here made the essence of the offense, and it must pre-exist before the prescribed penalties can attach. Inasmuch as the law, as interpreted by the treasury department, does not require express companies to use a five cent stamp, no such intent can be said to have pre-existed, and the court erred, therefore, without proof of such intent, in excluding the receipt. In the parallel case of *Desmond* v. *Norris*, (10 *Allen*, 250,) the court said : " It is only when such omission is fraudulent, that the guilty party is subject to a fine. It is sufficient for the decision of this case, that it does not appear that there was any willful violation of the law." In *Trull* v. *Moulton*, (13 *id.*) the same court said : " In order to affect the validity of the note, it should be averred that the stamp was fraudulently omitted." Of course, if it is necessary to aver it, it is equally necessary to prove it. (*People* v. *Utter*, 44 *Barb.* 170.)

VI. The act of congress of 1865, in so far as it attempts to

DeBarre *v.* Livingston.

invalidate contracts valid *lege. loci* for a neglect to stamp them is, *ultra vires,* unconstitutional and void.

*H. Morrison,* for the respondents. I. The objection to the paper being admitted in evidence, was well taken, for the reason that the same was an agreement which should have had affixed to it a revenue stamp duly canceled. (*Schedule B,* § 170, *Act of congress, June* 30, 1864.) "A receipt connected with and qualified by the terms of an agreement contained in the same instrument cannot be read as a receipt without an agreement stamp." (*Per Lord Ellenborough, Odyce* v. *Cookney,* 1 *Mod. R.* 517.) "Cannot be read in evidence, cannot receive any legal operation ; parol evidence cannot be heard to cure it." (3 *Stark. Ev.* 1056 ; *see title defect of stamp, and cases cited in notes S and T. Tabbutt* v. *Ambler,* 9 *C. & P.* 60.) "Where the *same instrument* contains an agreement for the sale of fixtures, and words of demise of a house, a lease stamp is requisite." (3 *Stark. Ev.* 1047. *Corder* v. *Drakeford,* 3 *Taunt.* 382. *Coster* v. *Cowley,* 7 *Bing.* 457. 11 *id.* 197. *Clayton* v. *Burdenshaw,* 5 *B. & C.* 41. 11 *id.* 138.)

II. The constitution of the United States preserves the right to impose duties; to collect revenue. (*Article* 8, *Constitution of U. S.*) And by the same article, (*sec.* 17,) "to make all laws which shall be necessary and proper for carrying into execution the power ;" *ergo* the exception of the appellants' case, is groundless.

III. That portion of the paper which follows the receipt is void as an agreement, being *nudum pactum,* for the reason that it claims to exonerate the appellants from any liability ; even for their fraud or willful acts of destruction of the property entrusted to them as bailees. No law will recognize an agreement to that extent.

*By the Court,* INGRAHAM, J. The question in this case is whether a receipt such as is usually given by express compa-

DeBarre *v.* Livingston.

nies for goods delivered to them to be carried by express should be stamped.

By the act of 1862 express companies were prohibited from receiving any packages for transportation without delivering therefor a printed receipt having a stamp thereon, as required by that act, and such stamp duties varied from one to five cents according to the amount of freight to be received therefor.

The act of 1863 repealed all duties by way of stamps against express companies, and substituted in its place a duty of two per cent on the gross amount of all receipts of the express business, and all acts unconnected therewith were repealed.

The act of 1864 repealed this last provision, and enacted a duty of three per cent on the gross amount of the receipts of the company. The same act also provided a stamp duty on "receipts for the delivery of any property."

The act of 1865 amended the last act by adding after the words providing a stamp duty on "receipts for the delivery of any property," the following, "except receipts issued by any persons, firms or companies doing business as an express or express company, on the delivery of any property for transportation." These alterations of the law left the express companies subject to a tax of three per cent on their gross income, and free from any stamp duty on the receipt they should issue on the delivery of property for transportation.

There is no difficulty in understanding these provisions, and unless the paper called a receipt can be treated as a contract between the parties, and not as a receipt, there could be no ground on which a stamp could be considered necessary. The plaintiffs' counsel contended that the receipt was subject to a stamp duty of five cents under the provision requiring a stamp to an agreement or contract; and the court so ruled. The exception of this receipt from a stamp duty, in the act of 1865, excepts receipts issued by the companies on delivery of the property. There is nothing in this

paper amounting to an agreement such as was contemplated by this statute. The company give a receipt for the goods, stating the directions and quantity, and they annex to the receipt a notice that as a part of the consideration of the contract they are forwarders only, and that they are not responsible. There is nothing in the paper which binds them to do any thing beyond delivery. All that it contains, is a refusal to be bound beyond a certain amount and under certain conditions. It is in fact a statement of the conditions on which they receive the goods for transportation.

I cannot adopt the conclusion that this is subject to a stamp duty of five cents. That is only applicable to an agreement other than those specified in that schedule B, and of course excepts receipts for property to be delivered. Such a receipt would amount to nothing if it did not contain a description of the agreement for delivery; such as the person to whom it was to be delivered, the place of delivery, the conditions on which it was to be carried. All this might properly be inserted in the receipt and subject it only to a stamp duty of two cents. The exception in regard to these receipts relieved them from that duty of two cents. I think also the intent of congress may be inferred from the previous legislation on this subject. Originally, the companies were compelled to give a receipt with a stamp of one to three cents; and the provision as to agreements excepted all others contained in the same schedule. And then the act of 1863 relieved these companies from all obligation to pay these duties, and expressly declared them exempt from stamp duty.

The act of 1864 which was a new act in place of the former internal revenue act, again enacted a duty of two cents on receipts for property to be delivered, which were again excepted from liability to a stamp of five cents on an agreement. But this was in 1865 again relieved by an exception in favor of these companies. This whole course of legislation shows that the receipts ordinarily given by these

DeBarre *v.* Livingston.

companies was not intended to be charged, at any time, beyond two cents duty, and while the duty on the gross receipts was exacted that no duty was to be charged on the receipt.

The term receipts, issued by express companies, must be understood as meaning such papers as had usually been issued by them on delivery of property to them for transportation. They were originally required to give printed receipts. Such receipts were only subject to a specified tax. It is the same kind of receipt that the various acts refer to in the subsequent provisions I have noted.

My conclusions are :

1. That this receipt is not an agreement within the meaning of the stamp act, requiring a stamp of five cents.

2. That it is a receipt for the property to be transported, and contains only a notice of the terms on which the company is willing to undertake the transportation.

3. That such receipt is not subject to any stamp duty, but is excepted in the act of 1865.

4. That the court below erred in excluding the paper offered.

The conclusion to which I have arrived, renders it unnecessary for me to examine the other question argued by the counsel, that congress has not the power to declare a contract void for want of a proper stamp. The clause which vests in congress the power to make all laws necessary and proper to carry into execution the express powers granted, has of late received, on several occasions, such an extended construction, as to cover almost every power which in the opinion of congress is deemed desirable, and may be in this way held sufficient for the present purpose. It is not necessary, however, to express any opinion on this point.

The judgment should be reversed, and a new trial ordered ; costs to abide the event.

[NEW YORK GENERAL TERM, April 1, 1867. *Leonard, Ingraham* and *James C. Smith,* Justices.]