## SUPREME COURT.

### JAMES BELGER agt. WILLIAM B. DINSMORE, President and Treasurer of the Adams Express Company.

A *receipt* given by an *express company* for goods delivered to it for carriage, does not
require a *United States revenue stamp* to be affixed to it.

An *express campany* is to be regarded as a *common carrier*, and their responsibility for
the safe delivery of property intrusted to them is the same as other common car-
riers. But they may limit their liability by express contract.

A common carrier receives a consideration for the carriage of property, and he is
bound to carry it accordingly; he cannot, by a mere *notice*, relieve himself from
that liability. Even proof of such notice being brought to the knowledge of the

Belger agt. Dinsmore.

owner, would not be sufficient to relieve the carrier of liability ; but an *express con-
tract must be proven.*

The mere acceptance of a receipt of the carrier by the owner or shipper, limiting
the liability of the carrier, is not proof of an express contract between the parties,
settling and limiting such liability.

*New York General Term, January,* 1868.

THE plaintiff sues the defendant to recover the value of a
trunk placed in charge of the express company, and lost
while under their care. The loss was not disputed on the
trial. The plaintiff valued the trunk and contents at $467.

The defendant offered in evidence a receipt, given at the
time of receiving the trunk, on which was a stipulation on
the part of the company, limiting their liability in various
ways. The only part material in this controversy is as fol-
lows: "Nor in any event shall the holder hereof demand·
"beyond the sum of fifty dollars, at which the article for-
"warded is hereby valued, unless otherwise herein expressed,
"or unless specially insured by them, and so specified in this·
"receipt, which insurance shall constitute the limit of the
"liability of the Adams Express Company."

The articles included in this receipt were six trunks and
three boxes. One of the trunks was lost.

Upon the trial, the admission of the receipt in evidence,
when offered by the defendant, was objected to, on the
ground that it was not stamped, which objection was over-
ruled, and plaintiff excepted. The court then permitted
defendants' counsel to affix a stamp in court.

The admission of the receipt in evidence was also objected
to on the ground that there was no evidence that the know-
ledge of the contents of the receipt ever came to, or was
brought home to, the plaintiff; which objection was over-
ruled, and the counsel for the plaintiff excepted.

The plaintiff asked to submit the question of negligence to
the jury, which the court refused, and held that the receipt
was a contract between the parties, and the defendant was
excused from all liability except as stated in the receipt, and
the judge so charged the jury, and directed the jury to find a

verdict for the plaintiff for $50 and interest; to which the plaintiff excepted. The jury so found. The court added, exceptions heard at general term in the first instance, and judgment was suspended.

ROWLAND M. HALL, *for plaintiff.*

I. The Adams Express Company, the respondent, are governed by the rules of law applicable to common carriers, in their character of express agents, forwarders, and bailees for hire. (*Sweet* agt. *Barney*, 23 *N. Y. R. p.* 335.)

In this case, the court of appeals held " that the defendants (an express company) "were common carriers," and said, "persons whose business it is to receive pack- " ages of bullion, coin, bank notes, commercial paper, and such other articles of value " as parties see fit to entrust to their care, for the purpose of transporting the same " from one place to another for a compensation, are common carriers, and responsible " as such, for the safe delivery of property intrusted to them."

The supreme court of Massachusetts has just decided in the same way, in the case of *Buckland & Co.* agt. *The Adams Express Company*.

" In this country, in recent times, the business of carrying goods is almost monopo- " lized by what are called expressmen." " These are undoubtedly common carriers." (*Parsons' Mercantile Law, p.* 202.)

" The general principles of agency extend to common carriers, and make them lia- " ble for the acts of their agents done while in the discharge of the agency or " employment." (*Parsons' Mercantile Law, p.* 216.)

II. The appellant made out his case upon the trial as to the bailment of the pro- perty in question to the respondent, without alleging any written contract; and the respondent, by resting the defense upon a *receipt*, having written upon it a notice limiting his liability in case of loss, which he offered in evidence in proof of the con- tract between the appellant and himself, *elected to subject himself* to the application of the strict rule of law in reference to contracts. And the question whether or not that notice was brought home to the appellant, and whether, if so, it was assented to by him, were questions of fact, which should have been left to the jury to determine upon all the evidence, under the direction of the court.

" No party will be affected by any notice, unless a knowledge of it can be brought " home to him." " The question is one of fact, which the jury will determine upon all " the evidence, under the direction of the court." (*Parsons' Mercantile Law, p.* 223; *Dorr* agt. *New Jersey Steam Navigation Company*, 11 *N. Y. R. p.* 485.)

His honor Judge BALCOM erred, therefore, in holding "that the taking of the " receipt by the plaintiff's wife, when she delivered the trunk to the express agent, " was evidence that she then knew its contents," and in holding " that said receipt " was itself a contract between the plaintiff and the defendant, and that the fact of " its acceptance by the plaintiff, as shipper of the goods in question, at the time of the " shipment of said goods, was sufficient evidence of notice to the plaintiff of its con- " tents being brought home to the knowledge of the plaintiff, or his attention being " directed to it, and that the fact of such knowledge must be presumed from the " receipt being accepted."

The case of *Brown* agt. *Eastern Railroad Company* (11 *Cush. p.* 97), was an action of assumpsit for lost baggage. There was a notice printed on the back of the passage ticket given to the plaintiff, that the defendants would not be responsible beyond a specified sum; but no other notice was given, nor was the plaintiff's attention called

to this. Held, that these facts did not furnish that certain notice which must be given to exonerate the carrier from his liability.

The same doctrine has very recently been held in the supreme court, circuit, of Kings county, by his honor Judge GILBERT, in the case of *Willhams* agt. *Dodd;* but in this case the receipt was put in evidence by the plaintiff, and not by the defendant.

In the case of *The Camden and Amboy Railroad Co.* agt. *Baldauf* (16 *Penn. State R. p.* 67), it was held incumbent on the carrier to prove that the passenger had actual knowledge of the limitation in the notice.

His honor Judge BALCOM erred further in his ruling, quoted above, inasmuch as his decision prevented the appellant from adducing testimony upon the point as to whether or not the notice was assented to by him, and in confounding the act of taking the receipt with the notice printed upon it, with that acceptance which would imply assent to its terms.

" A common carrier cannot screen himself from liability by notice, whether brought " home to the owner or not. Notice is no evidence of assent on the part of the owner " and he has a right to repose on the common law liability of the carrier, who cannot " relieve himself from such liability by any act of his own." (*19 Wend. p.* 234; *Dorr* agt. *New Jersey Steam Navigatson Company*, 11 *N. Y. R. p.* 485.)

" It is well settled, by the weight of authority in this country, that a mere notice " that the carrier is not responsible, or his refusal to be responsible, although brought " home to the knowledge of the other party, does not necessarily constitute an agree- " ment. The reason is this: the sender has a right to insist upon sending the goods, " and to leave the carrier to his legal responsibility, and the carrier is bound to take " them on these terms." " The law will not presume, from his sending, an assent " to the carrier's terms. (*Parsons' Mercantile Law, p.* 223.)

III. But, even if the receipt and notice constituted a contract binding upon the par- ties, the respondent is still liable for negligence and carelessness, if these can be proved or lawfully inferred.

His honor Judge BALCOM erred, therefore, again, in refusing leave to the appellant to introduce proof on the point of negligence, and in refusing leave to go to the jury on this point, and in holding " that the receipt was to all intents and purposes a con- " tract between the parties, and that the defendant was by it excused from all lia- " bility except as stated in the receipt."

" It should be remarked, that such notice affects the liability of the common car- " rier only so far as it is peculiar to him, that is, his liability for a loss which occurs " without his agency or fault; for he is just as liable as he would be without notice, " for a loss or injury caused by his own negligence or default." (*Parsons' Mercantile Law, p.* 224.)

" A common carrier has in truth two distinct liabilities: the one for losses by acci- " dent or mistake, where he is liable by the common law as an insurer; the other for " loss by default or negligence, where he is answerable as an ordinary bailee." (*Dorr* agt. *New Jersey Steam Navigation Company*, 11 *N. Y. R. p.* 485.)

In the present case, the failure of the respondent to account for the loss of the pro- perty in question by accident, or in any way, gives rise to the just inference that the loss was caused by the gross negligence and default of the respondent and his agents in the premises.

## CLARENCE A. SEWARD, *for defendant.*

I. A common carrier may limit his liability Upon this point, as positive precedent supplies the authority, argument *a priori* is unnecessary. (*York Company* agt. *Cen-*

*tral Railroad;* 3 *Wallace, Sup. Court U. S.* 111; *Parsons* agt. *Monteith,* 13 *Barb. S. C. R.* 353; *Moore* agt. *Evans,* 14 *Id.* 524; *Dorr* agt. *New Jersey Steam Navigation Company,* 1 *Kernan,* 485; *Lee* agt. *Marsh,* 43 *Barb. S. C. R.* 102.) In this last case, LEONARD, P. J., said: "I think it must be considered as settled, in this state, that common carriers may limit their liability for negligence, in almost any respect, by express contract,", and, "that such contracts are not against public policy." This was concurred in by SUTHERLAND and BARNARD, Justices.

II. The receipt given in evidence constituted a contract between the parties.

(*a.*) It is called in the receipt itself an "agreement" and a "contract."

(*b.*) It was so construed at *Nisi Prius.*

(*c.*) It specifies the terms upon which the carriage was undertaken, and in so doing extends beyond the simple acknowledgment of the delivery of the subject of transportation. The receipt was a bill of lading.

III. The limitation of value to $50, unless otherwise expressed in the agreement itself, was valid.

1. The reward of the carrier is predicated of the value of the thing carried. Such apportionment is reasonable, because the value is the prime element of risk, and the law allows compensation proportioned to risk.

2. This stipulation limits the common law liability of the carrier as insurer, and is as reasonable as an agreement in a policy to abridge the statutory period of limitation. Such insurance agreements are valid. (*Cray* agt. *The Hartford Fire Ins. Co.* 1 *Blatch. C. C. R.* 280; *Reilly* agt. *The Etna Ins. Co.* 30 *N. Y. R.* 136; *Roach* agt. *N. Y. and E. Ins. Co., Id.* 546.)

3. *This very stipulation,* and others, differing in amount only, have been frequently the subject of judicial sanction. (*Van Toll* agt. *The S. E. Railway Co.* 12 *C. B. N. S.* 104; *Eng. Com. Law,* 75; *Newstadt* agt. *Adams,* 4 *Duer,* 43; *Van Winkle* agt. *Adams Express Company, MS.,* HOFFMAN, PIERREPONT *and* ROBERTSON, *Justices; Gagnebin* agt. *The American Express Company, MS.,* NASH, *Referee; Parker* agt. *Dinsmore, MS.,* COWLES, *Referee; Meyer* agt. *Harnden Express,* 24 *How. Pr. R.* 290; *Moriarty* agt. *Harden Express Company,* 1 *Daly,* 227; *Boorman* agt. *American Express Co., MS., Supreme Court of Wisconsin.*)

IV. In the present case, the issuance and acceptance of the receipt constituted a valid agreement, effectually limiting the liability of the defendant at $50 in case of loss.

(*a.*) As to the defendant, the consignor and consignee were identical. The goods were delivered by her and were addressed to her. In the absence of knowledge, the legal presumption is in favor of the ownership of the consignee. (*Sweet* agt. *Barney,* 23 *N. Y.* 335.) But where, as here, consignor and consignee are one and the same, the carrier has at least a right to suppose that the consignor is competent to contract as to the terms of carriage. Such, indeed, would be the rule, if the consignee were another person. (*Moriarty* agt. *Harnden Express,* 1 *Daly,* 227.)

(*b.*) All bills of lading are unilateral, and yet are universally held to conclude the shipper. A promissory note, when paid by its maker, belongs to him, and equity will compel its restoration, though the holder never entered into any agreement to return it. The sender of a telegram is concluded by the conditions contained in the printed blanks for messages, furnished by the telegraph company. (*Breese* agt. *U. S. Tel. Co.* 45 *Barb.* 274; *MacAndrew* agt. *The Electric Tel. Co.* 17 *Com. B.* 84 *E. C. L.* 3.) The conditions of a policy are binding upon the assured, though not signed by him. In fine, the majority of human contracts are unilateral, and repose for their obligation upon the assent which the law implies from their acceptance.

(*c.*) The plaintiff stipulated that the receipt was issued to him, and received by him, as shipper, and he produced it on the trial. This implies both knowledge and assent-

In this country the legal presumption is in favor of education and of an ability to read. (*See Common Schools generally*.) If the reception and retention of an unpaid account without objection, is sufficient to enable the creditor to recover upon an *insimul computassent*, or a stated account (12 *Wend*. 413; 1 *Kernan*, 172; 12 *Pet*. 330; 45 *Barb. S. C. R.* 490), *a fortiori vix dubitari posse videtur*, that the reception and retention of a bill of lading will conclude the educated shipper, unless he proves his dissent. The burden is upon him to show ignorance or dissent.

In *King* agt. *Woodbridge* (34 *Vermont*, 571), it was said that " a paper being shown to be in the custody of the plaintiff, a due and proper delivery of it to him, and of his assent to its terms, are to be presumed, and the burden is thrown on the plaintiff to obviate these presumptions by proof. It is for the plaintiff to show the circumstances under which the paper came into his possession, that he never assented to its terms, and that there was no such delivery of it as to make it operative as a binding contract." This was cited and enforced by the supreme court of Wisconsin in the case before referred to.

But, upon authority, this whole question is beyond argument. In *Van Toll* agt. *The S. E. Railway Co.* (*supra*), the stipulation was that "the company will not be responsible for any package exceeding the value of £10." There was no proof that the plaintiff had read the ticket. She had a verdict for £20. ERLE, Ch. J., WILLES, BYLES, KEATING, Justices, unanimously set it aside, holding that acceptance of the ticket was assent to the terms thereon printed.

In *Dorr* agt. *The New Jersey Steam Navigation Company* (*supra*), the receipt contained the following clause : "No package whatever, if lost, injured or stolen, to be deemed of greater value than two hundred dollars." The plaintiffs proved that such receipt did not come to their knowledge, otherwise than by delivery to their carman, until the day after the goods were shipped. The court refused to charge that the liability of the defendants for a total loss by fire was limited to $200. The court of appeals said : "The exceptions to the common law liability being made in the bill of lading, and delivered to the agent of the plaintiffs, must be deemed to have been agreed upon by the parties." This decides :

1. That acceptance is assent ;

2. That a receipt is a bill of lading.

The railway ticket cases, in the same court, further illustrate the rule. (24 *N. Y.* 182; *Id.* 215 ; *Id.* 223 ; 25 *Id.* 445.)

In *The York Co.* agt. *The Central Railroad* (*supra*), the judge charged the jury, that "it is competent for the carrier alone to limit his liability, without the engagement of the owner."

(*d.*) It follows from these views that the plaintiff's objections to the legal character of the receipt, and his offers of evidence to contradict its legal effect, were properly disposed of at the circuit.

V. The receipt did not require an internal revenue stamp. It was expressly exempted therefrom. It was an economy of time and labor to affix it, and obviated any necessity for an argument or citations of various statutes, not then in court. If it did not require a stamp, the affixing one was inutile and harmless. If it did require a stamp, as insisted by the plaintiff, then the same law which rendered the stamp necessary authorized it to be affixed in court. The receipt was dated "May 4, 1864." The 163d section of the act of June 30, 1864 (13 *U. S. Stat. at Large*, 295), provides as follows :

"*And be it further enacted*, That no deed, instrument, document, writing, or paper, required by law to be stamped, which has been heretofore signed or issued without being duly stamped, or with a deficient stamp, nor any copy thereof, shall be recorded, or admitted, or used as evidence in any court, until a legal stamp or stamps,

Belger agt. Dinsmore.

denoting the amount of duty, shall have been affixed thereto, and the date when the same is so used or affixed, with his initials, shall have been placed thereon by the person using or affixing the same; and the person desiring to use or record any such deed, instrument, document, writing or paper, as evidence, his agent or attorney is authorized, in the presence of the court, register or recorder, respectively, to affix the stamp or stamps thereon required: *Provided*, That no instrument, document or paper, made, signed or issued prior to the passage of this act, without being duly stamped, or having thereon an adhesive stamp or stamps, to denote the duty imposed thereon, shall, for that cause, if the stamp or stamps required shall be subsequently affixed, be deemed invalid and of no effect."

This authorized the affixing of the necessary stamps, either in court or out of court. *Omne majus, &c.* The power to require a stamp implies the power to prescribe the time when the stamp must be affixed; and the force of the plaintiff's objections to the defendant's affixing it is not perceived.

VI. There should be judgment for the plaintiff upon the verdict for its amount, of $55.83. The costs should be apportioned as provided at the circuit, and the motion for a new trial should be denied.

*By the court*, INGRAHAM, J. 'Two questions are submitted to us in this case: one, whether a receipt by an express company requires a stamp; and second, whether such receipt, which limits the liability of the express company, is a contract between the parties, protecting the company from liability except as stated therein, without any proof of knowledge on the part of the holder of the contents thereof.

*First.* The objection to the admission of the receipt without a stamp has been examined by the general term of this district, in the case of *De Barre and others* agt. *The Hope Express Company.* It was there held that the stamp was not required, and that the exception in the act of 1865 covered such a receipt.

*Second.* The principle question in the case is, as to the extent of the defendant's liability, and whether an express company can, by a notice, or by an exception, in a receipt which is not shown to have come to the knowledge of the shipper or holder, exempt themselves from liability in whole or in part, if the article is lost through the negligence of the express company.

That the defendant's company is to be regarded as a *common carrier*, and their responsibility for the safe delivery of property intrusted to them is the same as theirs, has been

settled by various decisions. (*Russell* agt. *Livingston*, 19 *Barb*. 346; *Sherman* agt. *Wells*, 28 *Barb*. 403.) And the same has been distinctly held by the court of appeals in *Sweet* agt. *Barney* (23 *N. Y. R*. 335).

It is equally well settled that a common carrier may, by express contract between himself and the party contracting with him, agree to a limitation of his liability. (*Parsons* agt. *Monteith*, 13 *Barb*. 353; *Moore* agt. *Evans*, 14 *Barb*. 524; *Dorr* agt. *The New Jersey Steam Navigation Company*, 11 *N. Y. p*. 485.) In the latter case it is said: "That a carrier " may by express contract restrict his common law liability, " is now, I think, a well established rule of law." (*Lee* agt. *Marsh*, 43 *Barb*. 102; *York Co*. agt. *Cen. R. R. Co*. 3 *Wallace U. S. R. p.* 111.)

The decisions in this state have also settled that a common carrier cannot relieve himself from liability, either in whole or in part, by a mere notice indorsed upon the ticket or receipt.

*Hollister* agt. *Newton* (19 *Wend*. 234), in which it was held that the carrier's notice, even if brought home to his employee, could not be sufficient to infer an express contract. The argument there used is that the carrier is bound to receive and carry goods delivered to him, for which duty he receives a compensation. He has no right to prescribe other terms; and a notice, at most, is only a proposal for a special contract, which requires the assent of the other party.

In *Bisell* agt. *New York Central Railroad Company* (25 *N. Y*. 442), SELDEN, J., says: "The question appears to be settled that the companies cannot limit their responsibility by any notice, though expressly brought to the knowledge of those whose persons, or whose property, they carry; but they may secure such limitation by express contract with those persons.

These cases all rest on the principle that the carrier receives a consideration for the carriage, and he is bound to

carry the goods accordingly; that he cannot, by a mere notice, relieve himself from that liability; that even proof of its being brought to the knowledge of tł e owner would not be sufficient to relieve the carrier's liability, but that an express contract must be proven.

There is another class of cases where the carriage of pas- sengers on free tickets, without compensation, does not involve the application of this strict rule; but that rests on a different principle; it is not applicable to the present case.

Upon the trial of this case, the justice not only refused to submit to the jury the question whether there was any evidence of a contract between the parties, but expressly held that the contents of the receipt were a binding contract between the parties, limited the defendant's liability to $50 and interest, and directed a verdict for the plaintiff for that amount.

In this the learned justice erred, and a new trial must be ordered. Verdict set aside; new trial ordered, costs to abide event.

Concur, GEORGE G. BARNARD.

Concur, J. SUTHERLAND.

————◆◆◆————

# N. Y. SUPERIOR COURT.

