Lienau agt. Dinsmore.

# N. Y. COMMON PLEAS.

MICHAEL LIENAU and others, agt. WILLIAM DINSMORE, President of Adams Express Company.

In an action against an *express company* to recover the amount of a *draft* received by them from the plaintiffs for collection, and as alleged, the defendants neglected to collect, or to give the plaintiffs due notice of its non-payment:

*Held*, that before the plaintiffs can recover more than nominal damages, they must show that they could in all probability have collected the amount of the draft or some part of it from the drawee, if they had received the notice of non-payment which the defendant's duty in the premises required them to give.

The defendants having used due diligence in endeavoring to obtain payment of the draft and having failed, the plaintiffs must show that they could have done better, and that there was, at least, a reasonable probability that they could have collected the amount if they had been properly notified that the same was not paid, before they are entitled to recover the full amount thereof.

*General Term, January*, 1871.

*Before* ROBINSON, LOEW *and* LARREMORE, *JJ.*

APPEAL from a judgment.—It appears that the plaintiffs sold goods to one David Wolff, of Memphis, Tennessee, amounting to $1,037 56-100.

On the 26th day of December, 1866, the former drew a draft on the latter for said sum payable at sight, to the order of Adams Express Company, and on the same day delivered said draft to the said company for collection.

The route of the defendants only extending to Bowling Green, Kentucky, they at said place delivered the said draft to the Southern Express Company, for collection.

The receipt given by the defendants to the plaintiffs, when the former received the draft, contained several stipulations or conditions, one of which reads as follows: "And if the said paper or proceeds is intrusted or delivered to any other express company or agent (which said Adams Express Company

are authorized to do,) such company or person so selected shall be regarded exclusively as the agent of the depositor, and as such alone liable, and the Adams Express Company shall not be, in any event, responsible for the negligence or non-performance of any such company or person."

On the 27th of February, 1867, the plaintiffs wrote to the defendants, to the effect that they had not received the proceeds of said draft, and that if they suffered any loss by reason of the negligence of the defendants or their agents, they would hold them responsible.

On the 9th day of March, 1867, the original draft was returned to the plaintiffs by the defendants, with a note written by the agent of the Southern Express Company, which read as follows: "D. Wolff has been sick for some time. Draft presented a number of times; promised to pay 'soon.' On last presentation, Mr. W. was found to have failed in business, and says it is impossible for him to pay. "M. L. DOHERTY, *Agent.*"

On the trial of this cause, a clerk of the plaintiffs testified that between the time when he left the draft with the defendants, and the time when the same was returned to the plaintiffs, he called a number of times at the office of the defendants, and inquired about the draft or the money, but was always informed that they had not heard from it, and that they would write to their agents in Memphis in regard to the matter.

This was contradicted by the evidence of a clerk in defendants' employ.

The court instructed the jury that if they believed the testimony of plaintiffs' clerk, the plaintiffs would be entitled to recover the full amount of the draft.

To this charge defendant's counsel excepted, as also to the refusal of the court to charge that upon the evidence the plaintiffs were entitled to recover only nominal damages.

The jury, thereupon, found a verdict for the plaintiffs,

for the full amount of the draft, with interest from its date.

The defendants appealed.

BLATCHFORD, SEWARD and DA COSTA, *for defendants and appellants.*

T. S. ALEXANDER and R. P. LEE, *for plaintiffs and respondents.*

*By the court,* LOEW, *J.*—An express company may be deemed a common carrier, and like the latter, may restrict or limit their liability by express contract, but it may well be doubted whether they can do so by a mere printed notice or condition on the receipt, which the party sending goods by, or otherwise employing them, may or may not have seen. (*Dorr* agt. *The N. J. Steam Nav. Co.,* 11 *N. Y.,* 485 ; *Bissell* agt. *N. Y. Central R. R. Co.,* 25 *N. Y.,* 445 ; *Belger* agt. *Dinsmore,* 34 *How.,* 421.)

Assuming, but without deciding, that the defendants in this action could not thus limit their responsibility, or if they could, that the plaintiffs are correct in their views, and that the defendants, by their subsequent acts, must be deemed to have waived the conditions in the receipt, which they claim, exempts them from all liability for the negligence of the Southern Express Company, to which they transferred the draft, and that they are estopped from saying that they passed the same over to said company, still I do not see how this judgment can be sustained.

It was admitted by the plaintiffs in their complaint, and also by a certain stipulation signed by their attorney, and read on the trial, that within a few days after the delivery of the draft to the defendants, and as soon as the same could be transmitted to Memphis, to wit, on or about the 31st day of December, 1866, and repeatedly thereafter, the agent of the Southern Express Company presented said draft for payment to the drawee ; that payment thereof was repeat-

Lienan agt. Dinsmore.

edly demanded, and that the said drawee neglected and refused to pay, although he repeatedly promised to do so.

It thus appears to be conceded by the plaintiffs themselves, that the defendants did all that could possibly be asked or required of them in regard to transmitting the draft to Memphis, and presenting the same to and demanding payment thereof from the drawee.

Now, the evidence on the part of the plaintiffs shows, that they never requested the defendants to return the draft, nor did they surrender the receipt and pay the charges, all of which was necessary, according to the terms of one of the clauses in the receipt, before the defendants could be required to return the said draft, and it may, therefore, be questionable whether they were bound to do so. (*Newstadt* agt. *Adams*, 5 *Duer*, 13 ; *Manhattan Oil Company* agt. *Camden Railroad*, 5 *Abb.*, *N. S.*, 289 ; *Bostwick* agt. *The Baltimore and Ohio Railroad Company*, 55 *Barb.*, 137.)

However that may be—for, as already intimated, there are also authorities to the contrary—it is quite clear that the defendants should, at least, have given due notice to the plaintiffs of the non-payment of the draft, and not having done so, they must be held liable to the plaintiffs for all damages sustained by them by reason of their negligence. But it seems to me that before the plaintiffs can recover more than mere nominal damages, they must show that they could, in all probability, have collected the amount of the draft, or some part thereof, from the drawee, if they had received the notice of non-payment, which the defendants' duty in the premises, required them to give. (*Allen* agt. *Suydam*, 20 *Wend.*, 327 *to* 331.)

The defendants having used due diligence in endeavoring to obtain payment of the draft and having failed, the plaintiffs must show that they could have done better, and that there was at least, a reasonable probability that they could have collected the amount of the draft, if they had been

Lienan agt. Dinsmore

properly notified that the same was not paid, before they are entitled to recover the full amount thereof.

But having done that, I think they would be *prima facie* entitled to a verdict or judgment for that amount, and the onus would then be upon the defendants to prove, that the real loss or damages sustained by the plaintiffs, in consequence of the negligence imputed to them was not the whole amount of the draft. There is not a particle of evidence in the case to show that payment of this draft or any part thereof, could have been obtained, either by legal proceedings or otherwise, between the time when it was first presented to the drawee for payment and the time when the plaintiffs were notified of its non-payment.

From the facts and circumstances of the case, the probabilities seem to me to be all the other way.

In my opinion, the jury should have been charged as the chancellor thought they should have been instructed in *Allen* agt. *Suydam* (*supra*), viz.: that upon the evidence the plaintiffs were only entitled to nominal damages; or at least they should have been told to find only such damages as they should from the evidence believe it probable that the plaintiffs might have sustained by reason of the delay of the defendants in notifying them of the non-payment of the draft.

The judgment should be reversed and a new trial ordered, costs to abide event.

LARREMORE, J.—Concurred.