FAHY *et al. v.* FARGO.

*(Supreme Court, General Term, Fifth Department.* January 22, 1892.)

NEGLIGENCE OF AGENT—COLLECTIONS—FAILURE TO OBEY INSTRUCTIONS.

On November 15th plaintiffs gave a draft to defendant for collection, with instructions that, if it was not paid on presentation, to hold it one day, and, if not paid then, to return it. The draft was presented to the drawees on the 18th, who made various excuses for not paying the draft, which defendant held several days, at their request. The draft was returned to plaintiffs on December 1st, which was the first notice they had of its dishonor. Until November 29th the drawees owned partnership and individual property not exempt from execution. On the 29th the drawees assigned all their property, and preferred certain creditors, not including plaintiffs. Defendant could have complied with the instructions, and have returned the draft by November 20th. *Held*, in an action against defendant for failing to promptly return the draft, that a presumption of law arose that plaintiffs could have collected the claim against the drawees if defendant had followed instructions. LEWIS, J., dissenting.

Appeal from judgment on report of referee.

Action by John Fahy and another against James Fargo, as president of the American Express Company, for failure to return a draft promptly which was intrusted to defendant for collection. Judgment on the report of a referee awarding plaintiffs nominal damages. Plaintiffs appeal. Reversed.

Argued before MACOMBER, LEWIS, and CHILDS, JJ.

*Irving Paine,* for appellants. *Nathaniel Foote,* for respondent.

MACOMBER, J. This action is brought to recover damages for the negligence of the defendant in failing to return promptly a draft intrusted to it for collection of Seaver & Hall, debtors of the plaintiffs, doing business at Byron, N. Y. On the 15th day of November, 1886, the firm of Seaver & Hall were indebted to the plaintiffs in the sum of $187.36 for goods sold by the plaintiffs to that firm. On the 15th day of November in that year the plaintiffs delivered to the defendant a draft in the usual form, requesting the defendant to present the same to Seaver & Hall, and collect it, with instructions in writing that, if the same was not paid on presentation, to hold it for one day, and, if not able to collect it on the expiration of that time, to return it to the plaintiffs. All of this the defendant undertook to do. The defendant, however, having no office at Byron, did, on the 16th day of November, 1886, employ the National Express Company to perform this service; and the draft which was handed to the National Express Company was, by the latter, on the 18th day of November, 1886, presented to the debtors, who requested time to examine the account of the plaintiffs. The agent of the National Express Company retained the draft in his possession, and again, on or about the 25th day of November, presented the same to a member of the firm of Seaver & Hall, who still neglected to pay it, rendering as an excuse therefor that they had not had time to examine such account. The draft was then held until the 30th day of November, when the same was returned to the office of the National Express Company at Rochester, and by the latter returned to the plaintiffs on the 1st day of December, 1886. On this day, namely, the 1st day of December, 1886, on receiving the draft back, the plaintiffs were first notified that the draft had not been paid. When the draft was delivered to the defendant for collection, and until the 29th day of November, 1886, the firm of Seaver & Hall were carrying on business at Byron, owned and had in their possession property of the value of several thousand dollars, and each of the two members of the firm owned individual property, not exempt from levy and sale on execution, exceeding in value the amount of the draft. On the 29th day of November, Seaver & Hall made a general assignment of their copartnership and individual property, in trust for the benefit of creditors, with preferences therein to various creditors, but not any preference to the plaintiffs. In fact, for several days previous to the making of the assign-

ment, the firm had, as subsequent events showed, been insolvent, being unable to pay its debts in full. An action had been begun against the firm in the supreme court, some time prior to the making of the assignment, by one of its creditors, and, if no defense had been interposed, judgment could have been taken therein three or four days after the date of the assignment. The referee found that for several days before making the assignment Seaver & Hall contemplated making the same, but for how many days prior thereto such intention was uppermost in their minds does not distinctly appear. The referee further found as a matter of fact that the defendant could have complied with the directions as to the presentment, demand, and return of the draft, and have returned the same to the plaintiffs, and notified them of the non-payment, on the 20th day of November, 1886; and that, in failing so to return the draft with such notification, the defendant was guilty of negligence. But he has also found as a matter of fact "that it is not reasonably probable that the plaintiffs could have collected or secured their said claim against said Seaver & Hall had said draft been returned to them on the 20th day of November, 1886;" consequently he decides as a matter of law that the plaintiffs are entitled to maintain their action, but can recover nominal damages only, namely, one dollar. From the judgment entered upon that report this appeal is taken.

The general question of fact, therefore, is whether it appeared that it was reasonably probable that with such means of prosecuting their rights as were open to the plaintiffs they could have secured their claim against the debtors, had the defendant performed its duty, and returned the draft upon the 20th day of November. The learned referee has, apparently, placed his decision upon the authority of two cases,—*Lienan* v. *Dinsmore*, 41 How. Pr. 97, and *Failing* v. *Fargo*, 12 Wkly. Dig. 121. In both of these cases, as well as in the one at bar, no question of the duty to charge an indorser or other party to the draft is involved. Those cases hold that the rule applicable was that, if it is reasonably probable that the draft would have been accepted and paid by the drawee if the defendant's agent had done its duty, the defendant is *prima facie* liable for the whole amount of the draft, unless he is able to show that the whole amount of the draft has not been actually lost to the drawer in consequence of the defendant's negligence. The referee, in the case before us, has found, as stated above, that the firm, as well as the individual members of it, had real estate and personal property of more than sufficient value to meet the claim made upon it by the plaintiffs. In this respect the facts are materially different from those disclosed in the two cases cited. Yet he finds also as a fact that it is not reasonably probable that, had the draft been returned, the same might have been collected. In this last finding we are not able to concur with the learned referee under the proofs as they stand in the record. A presumption would arise, under the findings, that the plaintiffs, by availing themselves of the ordinary modes of judicial prosecution of the claims, might, and probably would, have secured their debt had they been apprised on the 20th day of November that their debtors refused to honor their draft. In what particular mode they would have prosecuted their claim it is not incumbent upon us to point out. It is quite clear that an action in a court of a justice of the peace might have been begun and prosecuted to judgment between the time when the draft ought to have been returned and the time of the assignment. But if, as intimated in the case, the debtors had a preconceived purpose of making a general assignment for the benefit of creditors, with certain preferences, in case their creditors crowded them in the courts, there might have been placed in the hands of the plaintiffs the more summary process of attachment upon the ground of a fraudulent purpose of making an assignment to escape payment of debts. But whether or not the facts would have justified the plaintiffs in pursuing either remedy, it is sufficient to say, under the findings, that both the firm and in-

dividual members had ample property, both real and personal, out of which to satisfy the plaintiffs' claim. From that fact a presumption of law arose, that such claim would have been paid had the defendant discharged its duty, and had not neglected the plaintiffs' interests. It is not sufficient to show by a mere suggestion of evidence, which wholly lacks conclusiveness in its details, that it was the purpose of the debtors, at any time when pressed by creditors, to make a general assignment, so as to escape the payment of any claim which might be prosecuted in the courts against them. We are of the opinion, therefore, that upon the question of fact the learned referee was in error, and that, consequently, the judgment should be reversed, and a new trial granted.

Judgment reversed, and a new trial granted, with costs to abide the event.

CHILDS, J., concurs. LEWIS, J., dissenting.